UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| FLANDREAU SANTEE SIOUX TRIBE, a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>v.<br><br>JOVITA CARRANZA, in her official capacity as Administrator of the United States Small Business Administration; and STEVEN MNUCHIN, in his official capacity as Secretary of the United States Department of the Treasury,<br><br>Defendants. | Civil Action No. 4:20-cv-4070<br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff the Flandreau Santee Sioux Tribe ("Tribe") brings this complaint for declaratory and injunctive relief.

**INTRODUCTION**

1. This action under the Administrative Procedure Act ("APA") challenges the U.S. Small Business Administration's ("SBA") Interim Final Rule, propounded on April 2, 2020 (and subsequently amended), implementing the Paycheck Protection Program ("PPP") established by section 1102 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. 116-136 (Mar. 27, 2020), 134 Stat. 281, 15 U.S.C. § 636(a)(36). The Interim Final Rule renders statutorily-eligible Tribal business concerns ineligible for PPP loans in clear violation of the plain language of the CARES Act.

2. The SBA's no-casino rule makes lawfully operating tribal casinos, including the Tribe's Royal River Casino and Hotel, ineligible for the PPP. The SBA's no-lender rule makes lawfully operating tribal lending businesses, including the Tribe's FSST Financial Services, LLC

1

and Flandreau Management Services, LLC, ineligible for the PPP. These ineligibility rules are contrary to the express and unambiguous terms of the CARES Act, which provides that "any … Tribal business concern … shall be eligible to receive a [PPP] loan" if the business employs no more than 500 employees. Because the rule contravenes the law it purports to implement, the SBA's exclusion of tribal casinos and lending businesses from the PPP is arbitrary, capricious, an abuse of discretion, not in accordance with law, and in excess of the SBA's statutory authority, all in violation of the APA.

3. The Tribe seeks to immediately enjoin the enforcement of the no-casino rule and the no-lender rule so that such rules will not prevent the Tribe from obtaining PPP loans to pay the employees of all its eligible Tribal businesses and meet other financial obligations of the Tribal businesses while such businesses are closed or in limited operation to protect the public health during the Covid-19 pandemic.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1337, 1346(a)(2) and 1362, in that this is a civil action arising under the Constitution, laws, or treaties of the United States, this is a civil action arising under an Act of Congress regulating commerce, this is a civil action against the United States not exceeding $10,000 in amount founded upon an Act of Congress or regulation of an executive department, and this is a civil action brought by an Indian tribe with a governing body duly recognized by the Secretary of the Interior wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

5. This action arises under the Constitution, laws, or treaties of the United States, including but not necessarily limited to the following: the Administrative Procedure Act, 5 U.S.C.

§§ 551-596 and §§ 701-706, and accompanying regulations; the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, the All Writs Act, 16 U.S.C. § 1651, the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721, and federal common law.

6.      The sovereign immunity of the United States has been waived with respect to the subject matter of this action and the relief requested herein by the APA, 5 U.S.C. § 702.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) in that this is a civil action in which each of the defendants is an officer or employee of the United States or an agency thereof acting in his or her official capacity, or an agency of the United States, no real property is involved in the action, and the plaintiff resides in this judicial district.

## PARTIES

8.      The plaintiff Tribe is a federally recognized Indian tribe located on the Flandreau Indian Reservation and headquartered at 603 West Broad Avenue, Flandreau, South Dakota 57028. *See* Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462, 5463 (Jan. 30, 2020).

9.      The Tribe owns and operates the Royal River Casino and Hotel ("Casino") on the Flandreau Indian Reservation in accordance with the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-2721.  The Tribe owns and operates FSST Financial Services, LLC and Flandreau Management Services, LLC (together, the "Tribal Lending Businesses") on the Flandreau Indian Reservation.  The Tribal Lending Businesses are limited liability companies wholly owned by the Tribe that are financial businesses primarily engaged in the business of lending.  The three business are collectively referred to herein as the "Tribal Businesses."

10.     Defendant Jovita Carranza is the Administrator of the SBA, which administers the PPP under the CARES Act.  Section 1114 of the CARES Act directs defendant Carranza, as the

SBA Administrator, to issue regulations to carry out the CARES Act.  Defendant Carranza and the SBA issued and are implementing and enforcing such regulations.  Defendant Carranza is sued in her official capacity.

11.     Defendant Steven Mnuchin is the Secretary of the United States Department of the Treasury.  The SBA Administrator consulted with Defendant Mnuchin to develop the regulations to carry out the CARES Act, including the Interim Final Rules at issue here.  Defendant Mnuchin is sued in his official capacity.

## GENERAL ALLEGATIONS

### *THE CARES ACT*

12.     Amid massive disruptions to small businesses caused by the novel coronavirus (Covid-19) pandemic, the federal government enacted the CARES Act to provide over $2 trillion in economic relief.  The President signed the CARES Act on March 27, 2020.

13.     Among other actions, the CARES Act established the Paycheck Protection Program, or PPP.  CARES Act § 1102(a)(2).

14.     The CARES Act situated the PPP provisions as a new paragraph 36 within section 7(a) of the Small Business Act, 15 U.S.C. § 636(a).

15.     The CARES Act states, "Except as otherwise provided in [paragraph 36], the [SBA] Administrator may guarantee [PPP] loans under the same terms, conditions, and processes as a loan made under [§7(a)]."

16.     In light of the extraordinary need for economic relief that the PPP seeks to address, paragraph 36 provides numerous exceptions to the general terms, conditions, and processes that generally apply to §7(a) loans.  The PPP features expanded eligibility criteria compared with the SBA's existing §7(a) loan programs (§1102(a)(2)(36)(D)) and authorizes banks to loan applicants

4

up to $10 million of federal funds (§1102(a)(2)(36)(E)). Lender and borrower fees are waived (§1102(a)(2)(36)(H)), the requirement that the borrower is unable to obtain credit elsewhere is waived (§1102(a)(2)(36)(I)), and no personal guarantee or collateral shall be required (§1102(a)(2)(36)(J)). Interest is capped at four percent. §1102(a)(2)(36)(L). The Act also forgives up to the full amount of the loan for eligible payments the borrower makes during the eight weeks after the loan origination date. §1106.

17. In subparagraph (36)(D), captioned "Increased Eligibility for Certain Small Businesses and Organizations," the CARES Act provides PPP eligibility requirements as follows (emphasis added):

> (i) In General.—During the covered period, in addition to small business concerns, **any** business concern, nonprofit organization, veterans organization, or **Tribal business concern** described in section 31(b)(2)(C) **shall be eligible to receive a covered loan** if the business concern, nonprofit organization, veteran's organization, or Tribal business concern employs not more than the greater of—
>
> (I) 500 employees; or
>
> (II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, veterans organization, or Tribal business concern operates.

18. The "covered period" is the period beginning on February 15, 2020 and ending on June 30, 2020. §1102(a)(2)(36)(A)(iii).

19. A "Tribal business concern described in [Small Business Act] section 31(b)(2)(C)" is, in relevant part, a "small business concern … that is wholly owned by one or more Indian tribal governments." 15 U.S.C. § 657a(b)(2)(C).

20. Early versions of the PPP legislation did not expressly make Tribal business concerns eligible for the PPP. Congress decided to expressly provide eligibility for any "Tribal business concern," even though such businesses would have been included as a generic "business

concern," to eliminate any ambiguity, to ensure that Indian tribes' dual roles as governments and business proprietors would not affect their eligibility for federal assistance available to governments or to businesses, and to ensure that the PPP reached all tribally-owned businesses that meet the statutory criteria.

21. The CARES Act singles out the "accommodation and food services" industry – identified in the Act by reference to the "North American Industry Classification System ["NAICS"] code beginning with 72" – for special treatment to ensure the PPP covers businesses in this industry as fully as possible. For businesses in this industry, the Act waives affiliation rules and counts each location separately for purposes of counting 500 employees. §1102(a)(2)(36)(D)(iii), (iv). The industry includes "casino hotels," NAICS code 721120, and therefore includes the Casino.

22. The CARES Act also provides the following "borrower requirement," subparagraph (36)(G):

> (i) Certification.—An eligible recipient applying for a covered loan shall make a good faith certification—
>
> (I) that the uncertainty of current economic conditions makes necessary the loan request to support the ongoing operations of the eligible recipient;
>
> (II) acknowledging that the funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments;
>
> (III) that the eligible recipient does not have an application pending for a loan under this subsection for the same purpose and duplicative of amounts applied for or received under a covered loan; and
>
> (IV) during the period beginning on February 15, 2020 and ending on December 31, 2020, that the eligible recipient has not received amounts under this subsection for the same purpose and duplicative of amounts applied for or received under a covered loan.

23.     The CARES Act, in subparagraph (36)(F)(ii)(II), directs lenders "evaluating the eligibility of a borrower for a covered loan within the terms of this paragraph" to "consider whether the borrower—(aa) was in operation on February 15, 2020; and (bb)(AA) had employees for whom the borrower paid salaries and payroll taxes; or (BB) paid independent contractors, as reported on a Form 1099-MISC."

24.     PPP loans are to be used for payroll and salaries, group health insurance premiums, payments for mortgages, rent and utilities, and interest payments on existing debts.  § 1102(a)(2)(36)(F).  The aim of the PPP, therefore, is not to fund the business operations of the borrower, but rather to provide money to other people – employees, landlords, lenders, health insurance and utility providers – while the borrower's business is temporarily closed or otherwise short of revenue because of the covid-19 pandemic.  In short, the policy of Congress and the purpose of the statute is to keep small business personnel on payrolls until businesses can return to normal operation.

25.     Congress authorized commitments of $349 billion for the PPP and other §7(a) loans for the period from February 15, 2020 through June 30, 2020.

26.     Lenders began to accept PPP loan applications almost immediately after the CARES Act became law.  PPP loans are funded on a "first-come, first-served" basis.

27.     The SBA publicly announced that the $349 billion authorization for the PPP was completely exhausted as of Thursday, April 16, 2020, less than two weeks after the application period opened.

28.     On April 23, 2020, Congress authorized a further commitment for PPP loans in in the amount of $310 billion.  The president is expected to sign the appropriation shortly.

29.     Section 1114 of the CARES Act gives the SBA Administrator emergency rulemaking authority to "carry out" Title I of the CARES Act, which includes the PPP.

*THE INTERIM RULE*

30.     On or about April 2, 2020, the SBA issued an Interim Final Rule, "Business Loan Program Temporary Changes; Paycheck Protection Program."  The Interim Final Rule was published in the Federal Register on April 15, 2020.  85 Fed. Reg. 20811.

31.     Under the heading, "How do I determine if I am ineligible?", the Interim Final Rule states: "Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 … except that nonprofit organizations authorized under the Act are eligible."  85 Fed. Reg. at 20812.

32.     Under the previously adopted 13 C.F.R. § 120.110, certain types of businesses are generally ineligible for SBA business loans.  The list of ineligible businesses includes "Businesses deriving more than one-third of gross annual revenue from legal gambling activities," 13 C.F.R. § 120.110(g), and "Financial businesses primarily engaged in the business of lending," 13 C.F.R. § 120.110(b).

33.     Thus, the Interim Final Rule for implementing the PPP incorporates the SBA's general "no-casino rule" and "no-lender rule."

34.     The list of ineligible businesses under 13 C.F.R. § 120.110 also includes "Non-profit businesses." 13 C.F.R. § 120.110(a).  However, the Interim Final Rule specifies that despite their general ineligibility under § 120.110, "nonprofit organizations authorized under the Act are eligible."  85 Fed. Reg. at 20812.

35.     The list of ineligible businesses under 13 C.F.R. § 120.110 does not apply to the SBA's "HUBZone" program, established by 15 U.S.C. § 657a – the section referenced in the CARES Act to define "Tribal business concerns."  Thus, a "Tribal business concern" under the

CARES Act is not inherently, by reference, or otherwise, limited to non-gambling and non-lending businesses.

36. The SBA's no-casino rule and no-lender rule originate with the SBA's Loan Policy Statement issued in 1953. *See* Loan Policy Statement § 101.4(d)(8) & (9), 19 Fed. Reg. 5440, 5441 (Aug. 26, 1954). The no-casino rule and no-lender rule have remained in place, with some modifications, ever since. The SBA Loan Policy Board enacted the rules pursuant to 15 U.S.C. § 633(d), which authorizes the Board to establish general policies regarding "the public interest involved in the granting and denial of applications for financial assistance."

37. On or about April 14, 2020, the SBA issued an amended Interim Final Rule, "Business Loan Program Temporary Changes; Paycheck Protection Program – Additional Eligibility Criteria and Requirements for Certain Pledges of Loans." *See* **Exhibit A**. The amended Interim Final Rule, in part, amended the no-casino rule as applied to the PPP.

38. In the amended Interim Final Rule, the SBA opened PPP eligibility to businesses with small, secondary gambling operations – those whose gambling revenue in 2019 was not more than $1 million and comprised less than half the business's total revenue for the year. Amended Interim Final Rule § 2.b.

39. The amended Interim Final Rule states, "The Administrator, in consultation with the Secretary, believes this test appropriately balances the longstanding policy reasons for limiting lending to businesses primarily and substantially engaged in gaming activity with the policy aim of making the PPP Loan available to a broad segment of U.S. businesses and their employees."

40. Numerous members of Congress have urged Administrator Carranza and Secretary Mnuchin to rescind the SBA's no-casino rule, expressing the view that the no-casino rule is contrary to the unambiguous language and intent of the CARES Act. Five such letters signed by

a total of 51 Senators and United States Representatives are attached hereto as **Exhibit B** . The Tribe has also urged Administrator Carranza and Secretary Mnuchin to amend the PPP eligibility rules to clarify that any tribal business that meets the statutory qualifications is eligible for PPP. **Exhibit C**.

*THE TRIBAL BUSINESSES*

41. The Tribe owns and operates the Royal River Casino and Hotel ("Casino") in accordance with the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-2721, and the 2016 gaming compact between the Tribe and the State of South Dakota.

42. Congress enacted IGRA in 1988 to statutorily authorize "the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1); *see* 25 U.S.C. § 2701(4) (finding that the promotion of these objectives is "a principal goal of Federal Indian policy").

43. According to an economics firm that studies the tribal gaming industry, 246 Indian tribes operate over 500 gaming facilities in 29 states. The Covid-19 pandemic has effectively shut down the entire casino industry. At tribal casinos alone, it is estimated that 296,000 people have been forced out of work and $665 million in wages have been lost. *See* http://www.meistereconomics.com/coronavirus-impact-on-tribal-gaming. While some tribal casinos are very large and staffed by thousands of employees, about 60 percent of tribal casinos have 500 employees or less.

44. With only very limited exceptions, IGRA requires that every tribal casino be solely owned by an Indian tribe. 25 U.S.C. § 2710(b)(2)(A). Employees of the Casino are licensed by the Tribe's gaming regulatory authority in compliance with IGRA, Tribal law, and the Tribal-State gaming compact.

45. The Tribe's Casino has been in operation since 1990.

46. The Casino employs approximately 250 people.

47. The Casino derives approximately 75.25% of its gross annual revenue from legal gambling activities.

48. The Tribe owns and operates the Tribal Lending Businesses, FSST Financial Services, LLC, and FSST Management Services, LLC. The Tribal Lending Businesses are financial businesses primarily engaged in the business of lending.

49. FSST Financial Services, LLC is a limited liability company wholly owned by the Tribe that was organized by the Tribe's Executive Committee on February 12, 2014 by Tribal Resolution 14-19, and it has been in operation since then. It employs one person.

50. FSST Management Services, LLC is a limited liability company wholly owned by the Tribe that was organized by the Tribe's Executive Committee on February 12, 2014 by Tribal Resolution 14-19, and it has been in operation since then. It employs nine people.

51. The Tribe can in good faith make the certification required for PPP applicants "that the uncertainty of current economic conditions makes necessary the loan request to support the ongoing operations" of the Tribal Businesses; "that funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments and utility payments;" and that the Tribal Businesses have no §7(a) loan application pending and have not received §7(a) funds since February 15, 2020, "for the same purpose and duplicative of amount applied for or received" under a PPP loan. *See* CARES Act §1102(a)(2)(36)(G).

52. The IGRA sets safety standards for gaming facilities, and requires that the "operation of that gaming is conducted in a manner which adequately protects the environment and the public health and safety." *See* 25 U.S.C. § 2710(b)(2)(E), 25 U.S.C. § 2710(d)(1)(A)(ii),

and 25 CFR Part 559. The Executive Committee of the Tribe temporarily closed the Casino on March 31, 2020 by Tribal Resolution 2020-52 to protect the health and safety of guests, employees, the community, and the wider public. The Casino has remained closed since then in compliance with federal and tribal law, and will face additional furloughs without PPP funding.

53. The Casino furloughed 225 employees, and approximately 25 employees remain employed. Furloughed employees were given two weeks of pay during the furlough, and the Tribe continues to pay for their healthcare benefits. The Tribe has a limited amount of cash reserves which will be completely depleted if the Casino does not reopen.

54. The Casino has debt obligations for a recently completed renovation which remain outstanding during closure.

55. The Tribal Lending Businesses remain open, however staffing has been an issue because of the Covid-19 pandemic, and several employees have been laid off. Additional recruitment efforts for employees will be necessary to sustain the business, including hiring bonuses and hazard pay. Some employees at the Lending Businesses are eligible for healthcare, and continue to receive benefits through the Covid-19 pandemic.

56. The Casino is eligible for a PPP loan under the CARES Act, but the SBA's no-casino rule makes the Casino ineligible.

57. The Tribal Lending Businesses are eligible for PPP loans under CARES Act, but the SBA's no-lender rule makes the Tribal Lending Businesses ineligible.

58. The Tribe applied to the First National Bank in Sioux Falls for a PPP loan for the Casino on April 2, 2020. The application was complete and submitted to the SBA through its portal on April 3, 2020. On April 9, 2020, the SBA notified the Bank of its determination that the Casino was not eligible for the PPP loan. On information and belief, the determination was based

on the SBA's no-casino rule. The Tribe also applied to the First National Bank in Sioux Falls for PPP loans for the Tribal Lending Businesses. On April 23, 2020, the SBA notified the Bank of its determination that FSST Financial Services, LLC is not eligible for a PPP loan. On information and belief, the determination was based on the SBA's no-lender rule. The Tribe anticipates a similar determination will be forthcoming for FSST Management Services, LLC.

59. In the absence of immediate judicial relief from the SBA's no-casino rule and no-lender rule, the Tribal Businesses will irreparably lose their statutory right under the CARES Act to participate in the PPP. Because of the SBA's no-casino rule and no-lender rule, the Tribal Businesses have already lost their statutory right to participate in the PPP's first round of lending. It is widely reported, and the Tribe anticipates and believes, that the second round of funding will be expended almost immediately. *See* "PPP is Back … But Small-Business Owners Must Act Fast," Apr. 23, 2020, https://www.entrepreneur.com/article/349669. The extraordinary volume of PPP loan applications submitted during the first round which led the government to refuse further applications when the funds ran out in less than two weeks, the limited funding now available, the uncertainty of any further appropriations, and the Tribal Businesses' urgent need for economic assistance, all require immediate judicial relief enjoining enforcement of the no-casino rule and no-lender rule for the PPP.

60. It is in the public interest to ensure maximum participation in the PPP by all statutorily eligible business concerns, including all Tribal business concerns. Axiomatically, the public interest favors ensuring that the SBA's administration of the PPP is accomplished in accordance with the CARES Act passed by Congress and signed by the President. Federal assistance available only through the PPP will allow Tribal Business employees to receive their paychecks to buy groceries, pay their bills, support their families, inject capital into their

communities, and to not burden the other overstressed assistance programs of the federal, state and tribal governments.

63. The PPP would provide **$1,321,785** to supplement employees and ensure that they can meet their basic needs during this pandemic, while allowing the Tribal Businesses to survive in complete shutdown. Without assistance from the PPP, the Tribal Businesses will suffer irreparable harm, face additional furloughs, and inevitably face permanent closure.

## CLAIM ONE

### (Declaratory and Injunctive Relief, 5 U.S.C. § 706 and 28 U.S.C. §§ 2201-2202)

62. Plaintiff incorporates by reference and realleges herein the allegations contained in the foregoing paragraphs of this Complaint.

63. The APA authorizes judicial review of federal agency actions. 5 U.S.C. § 702.

64. The APA provides that the reviewing Court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). It further provides that a reviewing Court shall hold unlawful and set aside agency action, finding, and conclusions found to be in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. § 706(2)(C).

65. The CARES Act provides that "any … Tribal business concern … shall be eligible to receive a [PPP] loan" during the covered period, subject only to the following qualifications: the Tribal business concern meets the Act's size requirement, makes the required good-faith borrower certification, and was in operation as of February 15, 2020.

66. A "Tribal business concern" under the CARES Act by definition includes tribal casinos and tribal lending businesses with 500 or fewer employees.

67. The CARES Act does not authorize the Defendants to impose additional eligibility criteria for the PPP such as a no-casino rule and the no-lender rule.

68. By excluding tribal lending businesses and most tribal casinos from PPP eligibility, Defendants have acted in a manner that is arbitrary, capricious, an abuse of discretion, and not in accordance with law, in violation of the CARES Act and the APA. Plaintiff is entitled to an order declaring the same.

69. By excluding tribal lending businesses and most tribal casinos from PPP eligibility, Defendants have acted in a manner that is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of the CARES Act and the APA. Plaintiff is entitled to an order declaring the same.

70. Plaintiffs are entitled to a preliminary and permanent injunction enjoining Defendants not to apply a no-casino rule or a no-lender rule for purposes of PPP loan eligibility for Tribal business concerns under the CARES Act.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

1. Enter a declaratory judgment in favor of Plaintiff that Defendants' implementation and enforcement of a no-casino rule for Tribal business concerns otherwise eligible for the PPP is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law.

2. Enter a declaratory judgment in favor of Plaintiff that Defendants' implementation and enforcement of a no-casino rule for Tribal business concerns otherwise eligible for the PPP is in excess of Defendants' statutory jurisdiction, authority, limitations, or short of statutory right.

3. Enter a declaratory judgment in favor of Plaintiff that Defendants' implementation and enforcement of a no-lender rule for Tribal business concerns otherwise eligible for the PPP is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law.

4. Enter a declaratory judgment in favor of Plaintiff that Defendants' implementation and enforcement of a no-lender rule for Tribal business concerns otherwise eligible for the PPP is in excess of Defendants' statutory jurisdiction, authority, limitations, or short of statutory right.

5. Preliminarily and permanently enjoin Defendants, their agents, employees, successors, and all persons acting in concert or participating with them not to enforce, apply or implement such laws against Plaintiff, and to prioritize Plaintiff's application or re-application for a PPP loan and the funding of such loan upon approval.

6. Award Plaintiff its costs, fees and expenses, and granting such other and further relief as the Court may deem just and proper.

Respectfully submitted this 23rd day of April, 2020,

By: /s/ Seth Pearman
Seth Pearman
Attorney for Plaintiff

Seth Pearman, Attorney General
Flandreau Santee Sioux Tribe
603 West Broad Avenue
Flandreau, South Dakota 57028
Telephone: (605) 573-4206
Facsimile: (877) 508-0413
spearman@fsst.org

        John M. Peebles, *pro hac vice pending*
        Tim Hennessy, *pro hac vice pending*
        FREDERICKS PEEBLES & PATTERSON LLP
        2020 L Street, Suite 250
        Sacramento, California 95811
        Telephone:  (916) 441-2700
        Fax:  (916) 441-2067
        jpeebles@ndnlaw.com

## VERIFICATION

I, Anthony Reider, President of the Flandreau Santee Sioux Tribe Executive Committee, the elected governing body of the plaintiff Flandreau Santee Sioux Tribe, hereby verify and declare under penalty of perjury under the laws of the United States that I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief and know the contents thereof, and that the matters contained in the Verified Complaint are true to my knowledge.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct. Executed on April 23, 2020, at Flandreau, South Dakota.

Anthony Reider, Tribal President

JS 44  (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Flandreau Santee Sioux Tribe

### DEFENDANTS
The Hon. Jovita Carranza, Administrator, U.S. Small Business Administration, and Hon. Steven Mnuchin, Secretary, U.S. Department of the Treasury (Both in their official capacities).

**(b)** County of Residence of First Listed Plaintiff: **Moody County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant:
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Seth Pearman, Attorney General
Flandreau Santee Sioux Tribe
603 West Broad Avenue, Flandreau, SD 57028  (605) 573-4206

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. 636(a) and 15 U.S.C. 706

Brief description of cause:
Challenge to Unlawful Agency Action

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE

DOCKET NUMBER

DATE: 04/23/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

I.(a)  **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
  (b)  **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
  (c)  **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.  **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.  **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

IV.  **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: [Nature of Suit Code Descriptions](#).

V.  **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI.  **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

VII.  **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.  **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.